**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRIS BERRYMAN, | ) | |
| *individually and on behalf of all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 18-793 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| NEWALTA ENVIRONMENTAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendant/Third-party Defendant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SMITH MANAGEMENT AND | ) | |
| CONSULTING, LLC, | ) | |
| | ) | |
| Third-party Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff Chris Berryman ("Berryman") brings this class-action suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203 *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), Pa. Cons. Stat. § 333.101 *et seq.*, seeking to recover unpaid overtime wages and other damages against Defendant Newalta Environmental Services, Inc. ("Newalta").  Before the court is Newalta's motion to dismiss and request to compel arbitration (Doc. No. 28).  For the reasons explained below, the motion will be granted to the extent the court will order the parties to proceed to arbitration.

## II.    BACKGROUND

Chris Berryman worked in the oil and gas industry as a Solids Control Technician, in Washington County, Pennsylvania, from approximately April 2017 to December 2017.  Doc. No. 1 at 2.  His primary job involved maintaining drilling equipment.  *Id.* at 5.

Berryman claims that he worked for Newalta and that Newalta improperly classified him as an independent contractor to avoid paying him overtime.  *Id.*  He further claims that he and other similarly situated workers regularly worked more than 40 hours per week and, therefore, are entitled to overtime pay under the FLSA and the PMWA.  *Id.* at 8.

Newalta denies that it ever employed Berryman.  Doc. No. 12 at 2.  Although Newalta admits that Berryman "performed some very limited services" for the company, it claims that Smith Management and Consulting, LLC ("Smith Consulting") employed him for those services.  *Id.* at 3, 6.  Newalta further asserts that Smith Management was a "third-party services provider" for Newalta and that Smith Management was responsible for paying Berryman.  *Id.* at 6.  To that end, Newalta claims that it did not violate any federal or state employment laws.

Newalta and Berryman agree that Berryman worked for Smith Management and that, as part of that employment, Berryman performed services for Newalta.  *See generally* Doc. Nos. 1, 18, 28, and 46.  Both parties also agree that Smith Management is a "staffing company."  Doc. No. 46 at 8.  In terms of the relationship between Newalta and Smith Management, Newalta claims that it "contracted with and/or engaged Smith Management to provide trained workers to perform solid control services for Newalta on temporary, short-term projects."  Doc. No. 18 at 3.  Newalta, in turn, would pay a daily fee to Smith Management for each technician supplied to Newalta, based on that technician's level of experience.  *Id.*  Berryman does not dispute the mechanics of this

arrangement. Instead, he claims that both Newalta and Smith Management were his employers for purposes of the FLSA and PMWA. Doc. No. 24 at 11.

### A.    Procedural history

Berryman filed his complaint against Newalta on June 15, 2018. Doc. No. 1. Newalta filed an answer (Doc. No. 12) on July 10, 2018, and a third-party complaint against Smith Management (Doc. No. 18) on July 23, 2018. Berryman has since filed (1) a motion to strike or sever the third-party complaint (Doc. No. 23) and (2) a motion for conditional class certification (Doc. No. 29). Newalta has filed (1) a motion to dismiss and request to compel arbitration (Doc. No. 28) and (2) a motion to stay the case pending the ruling on the arbitration motion (Doc. No. 32). The court granted in part and denied in part Berryman's motion to strike; it denied Newalta's motion to stay. *See* Doc. Nos. 54, 61. This opinion addresses the motion to compel arbitration, which is fully briefed (see Doc. Nos. 24, 46, 50, 51) and is ripe for disposition.

### B.    The motion to compel arbitration

Newalta asserts that Berryman should be compelled to submit his grievances to binding arbitration based on a contract he signed with Smith Management. In response, Berryman argues that Newalta cannot compel arbitration because it is not a party to said contract. Furthermore, Berryman maintains that Newalta waived any right to seek arbitration by filing a third-party complaint against Smith Management.

Berryman signed the arbitration agreement on April 24, 2017. Doc. No. 28-2. Signatories included Berryman (as "Contractor") and Smith Management (the "Company"). *Id.* As part of the arbitration agreement, Berryman agreed that all "Covered Claims" shall be exclusively

determined by final and binding arbitration, pursuant to the Federal Arbitration Act.[1]  Doc. No. 28-2 at 1, 3.  Covered Claims include:

> all disputes, claims or controversies between Contractor and the Company, or arising out of or relating in any way to the services or work Contractor . . . performs for or on behalf of the Company or for or on behalf of any client of the Company.

Doc. No. 28-2 at 1, ¶ 2.  Covered Claims is broadly defined as "all claims arising under federal, state or local statutory or common law," to include "any claim under any other laws governing compensation and overtime, such as the Fair Labor Standards Act."  *Id.* at 1–2, ¶ 3.  The contract further states:

> Arbitration shall apply to any and all Covered Claims, whether asserted by Contractor against the Company and/or against any current or former employee, officer, director, trustee, agent, benefit plan administrator, successor or assign of the Company that arise out of or relate to their actions on behalf of Company, or against any Company Client . . .

*Id.* at 1, ¶ 2.  In addition, the contract provides that "Contractor expressly waives his/her right to prosecute, participate in, or pursue a class or collective action against the Company or with respect to any Covered Claim."  *Id.* at 4, ¶ 9.  Finally, the contract includes a governing law provision,

---

[1] Of note, the agreement also provides the following acknowledgment clause:

> **CONTRACTOR ACKNOWLEDGES THAT HE/SHE HAS HAD AN OPPORTUNITY TO FULLY READ AND UNDERSTAND THIS ENTIRE AGREEMENT AND HAS BEEN GIVEN AN OPPORTUNITY TO FULLY READ AND UNDERSTAND THE AAA RULES. CONTRACTOR'S SIGNATURE BELOW CERTIFIES, THAT CONTRACTOR HAS READ, UNDERSTANDS, AND VOLUNTARILY AGREES TO THE TERMS OF THIS AGREEMENT.  EACH PARTY ACKNOWLEDGES HAVING THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PERSONAL LEGAL COUNSEL OR ANY ADVISOR OF HIS/HER CHOOSING, AND HAS USED THAT OPPORTUNITY TO THE EXTENT DESIRED.**

Doc. No. 28-2 at 5 (emphasis in original).

stating that the contract "shall be governed by and construed in accordance with the State of Texas." *Id.* at 4, ¶ 14.

## III.    DISCUSSION

The crux of the controversy is whether Newalta, as a non-signatory to the contract, has standing to compel arbitration. The analysis ultimately turns on whether Newalta constitutes a third-party beneficiary under the contract.

To resolve this issue, the court must determine the appropriate standard of review. The court will then address the issue of arbitrability and whether there is a binding agreement to arbitrate. Finally, the court will address whether Newalta waived its right to seek arbitration by filing a third-party complaint.

### A.    Standard of review[2]

The arbitration agreement calls for final and binding arbitration pursuant to the Federal Arbitration Act ("FAA"). Doc. No. 28-2 at 2–3, ¶ 5. Congress enacted the FAA, codified at 9

---

[2] Although the arbitration agreement must be construed under Texas law, the court will apply federal law when considering the applicable standard of review and the issue of arbitrability. *See, e.g.*, *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013); *Santana v. A.L. Recovery, LLC*, No. CV 18-16, 2018 WL 3912830, at *5 (W.D. Pa. Aug. 16, 2018). The parties have not raised any disputes regarding the applicable choice of law. To the extent the generic choice of law clause in the arbitration agreement could present an issue as to whether this court should apply Texas law or federal standards of judicial review, the court finds that federal law should be used. Federal standards are appropriate because the issue of arbitrability is ordinarily governed by the FAA, and the contract at issue does not expressly incorporate state procedural rules. *See Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 296 (3d Cir. 2001), abrogated on other grounds by *Hall St. Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576 (2008) ("[A] generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default standards); *see also Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 64 (1995); *Preston v. Ferrer*, 552 U.S. 346, 363 (2008); *Stone & Webster, Inc. v. Baker Process, Inc*., 210 F. Supp. 2d 1177, 1187 (S.D. Cal. 2002) ("[T]he general rule is that a general choice-of-law clause only incorporates state substantive laws, but NOT state procedural laws. In short, if parties to an arbitration agreement (subject to the FAA) intend to be bound by state procedural rules, they must expressly incorporate those state procedural rules into their contract.") (internal citations omitted).

U.S.C. §§ 1–16, "in response to the traditional judicial hostility to the enforcement of arbitration agreements." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003) (citations omitted). The Act establishes a "strong federal policy in favor of the resolution of disputes through arbitration," *id.*, and it requires federal courts to "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). A party to a valid and enforceable arbitration agreement is entitled to an order compelling arbitration; if all the claims in the suit are subject to arbitration, the district court may also dismiss the suit. *Alexander,* 341 F.3d at 263; *Scrivner v. Ace USA*, No. CIV.A. 07-1329, 2007 WL 4124497, at *1 (E.D. Pa. Nov. 20, 2007).

When addressing a motion to compel arbitration, a federal court is "limited to a narrow scope of inquiry." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012). "The court may consider only narrow 'gateway matters' that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause." *In re Pharmacy*, 700 F.3d at 116 (quoting *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007)). To that end, the district court considers "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *see also Alder Run Land, LP v. Ne. Nat. Energy LLC*, No. CIV.A. 3:13-222, 2014 WL 1758141, at *3 (W.D. Pa. Apr. 30, 2014), *aff'd*, 622 F. App'x 164 (3d Cir. 2015).

When ruling on a motion to compel arbitration, a district court should use either a motion to dismiss or a motion for summary judgment standard. Of course, using the correct standard is

critically important because the two standards differ significantly. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013). "[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)) (internal citations omitted). By contrast, the district court should defer a decision on compelling arbitration until summary judgment when

> either the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate . . . or the opposing party has come forth with reliable evidence . . . that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did.

*Id.* at 774 (3d Cir. 2013) (internal citations and quotations omitted).

Here, in reviewing both Berryman's complaint and Newalta's third-party complaint, the court finds that the issue of arbitrability is immediately apparent. Hence, Newalta's motion to compel arbitration will be evaluated under a Rule 12(b)(6) standard. The arbitration agreement explicitly covers legal disputes against Smith Management's company clients, including those described in the complaint. Doc. No. 28-2 at 1. Although Berryman asserts that the applicable standard is one for summary judgment, he does not cite any evidence outside the pleadings, nor does he provide any analysis to support his legal conclusion. He does not argue that Newalta is not a company client, nor does he request additional time to conduct discovery on the issue of arbitrability. *See* Doc. No. 46. He does not assert that he did not intend to be bound by the terms of the agreement, nor does he argue that the contract was unconscionable. Moreover, he does not argue that he did not sign the agreement or that he did not understand its terms. Rather, he argues

(1) that Newalta is not a third-party beneficiary of the contract; and (2) that Newalta waived its right to arbitrate. Both arguments are legal questions that can be addressed without discovery's delay.[3]

The court also notes that its decision regarding the standard of review aligns with the reasoning of other cases in this Circuit. *See, e.g.*, *Guidotti*, 716 F.3d at 780; *Kirleis v. Dickie, McCamey & Chilcote*, P.C., 560 F.3d 156, 162 (3d Cir. 2009); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). In each of these cases, the decision to compel arbitration was reserved for summary judgment because litigants submitted evidence showing a genuine issue of material fact as to the agreement to arbitrate. Berryman points to no such evidence; instead, he contends that this court must look solely to the contract's plain language to determine whether Newalta is a third-party beneficiary. *See* Doc. No. 46 at 6.

Given that the court will use a Rule 12(b)(6) standard, the test is "whether, under any reasonable reading of the pleadings, [the] plaintiff may be entitled to relief." *Kundratic v. Thomas*, 407 F. App'x 625, 627 (3d Cir. 2011). As always, the court must accept as true the well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009). Nevertheless, the factual allegations must be "enough to raise a right to relief above

---

[3]     Interestingly, in Berryman's brief in support of his motion to strike the third-party complaint, Berryman argues that Smith Management is not a necessary party to this action and that Berryman "should not be dragged through discovery" aimed at establishing the contractual relationship between Newalta and Smith Management. Doc. No. 24 at 6. To the extent that there could be any dispute as to Newalta *not* constituting a "Company Client" under the terms of the arbitration agreement, Berryman not only fails to raise the issue, he adamantly opposes the idea of conducting discovery to explore that matter.

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In other words, the claim must be "plausible." *Id.* at 570.

Finally, when considering a motion to dismiss, the court "will only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti*, 716 F.3d at 772 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). In other words, the court only examines the complaint and "narrowly defined" other types of material, such as documents "integral to or explicitly relied upon in the complaint," and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss." *In re Rockefeller Ctr. Properties, Inc. Securitites Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

Given the applicable standard of review, the court will accept all allegations in Berryman's complaint as true and construe them in the light most favorable to him. In ruling on the instant motion, the court will consider Berryman's complaint, Newalta's third-party complaint, and the arbitration agreement attached to Newalta's motion to compel arbitration.[4]

The court now considers whether there is a binding agreement to arbitrate.

---

[4] Although the arbitration agreement is not attached or referenced in Berryman's complaint, it is an undisputedly authentic document, and it is integral to the facts set forth in the pleadings. The court will thus consider it when ruling on the instant motion. *See Williams v. Nabors Drilling USA, LP*, No. CIV.A. 13-1013, 2014 WL 710078, at *1 n.1 (W.D. Pa. Feb. 25, 2014) (considering an arbitration agreement attached as an exhibit to a motion to compel arbitration). Furthermore, the court notes that, simply because Berryman ignores Smith Management and the arbitration agreement altogether in his complaint, that does not justify withholding the issue of arbitrability until summary judgment. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## B. Determining arbitrability

As discussed above, the agreement at issue is governed by the FAA. In determining the issue of arbitrability, the court applies federal law. *Santana v. A.L. Recovery, LLC*, No. CV 18-16, 2018 WL 3912830, at \*6 (W.D. Pa. Aug. 16, 2018); *see also supra* note 2. To that end, the threshold questions for the district court are (1) whether the parties seeking or resisting arbitration entered into an agreement, and (2) whether the dispute in this case falls within the scope of that agreement. *See id.*; *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir. 2005).

### 1. The existence of a valid arbitration agreement

In assessing whether there is a valid agreement between the parties, the court must refer to ordinary contractual principles governed by state law. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005) ("The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate."). Here, the contract at issue calls for the application of Texas law.

### i. Texas law involving contract interpretation

Under Texas law, ["i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citations omitted). To achieve this objective, courts "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* In other words, "no single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* Additionally, ambiguity in a contract is a question for the

court in the first instance; if contract language can be given "certain or definite meaning," the contract is not ambiguous, and the court should interpret it as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). On the other hand, if the contract is subject to two or more reasonable interpretations, the contract is ambiguous, creating "a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003); *see also Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996).

This case involves third-party beneficiaries in the context of arbitration agreements. Texas courts have addressed this issue. "A third-party beneficiary to a contract can compel or be compelled to arbitrate under an arbitration provision in a contract." *Carr v. Main Carr Dev.*, LLC, 337 S.W.3d 489, 494–95 (Tex. App. 2011). Nonetheless, Texas courts have cautioned:

> [T]here is a presumption against conferring third-party-beneficiary status on noncontracting parties. In deciding whether a third party may enforce or challenge a contract between others, **it is the contracting parties' intent that controls. The intent to confer a direct benefit upon a third party must be clearly and fully spelled out or enforcement by the third party must be denied.** Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract. A third party may only enforce a contract when the contracting parties themselves intend to secure some benefit for the third party and entered into the contract directly for the third party's benefit.

*S. Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007) (internal quotations and citations omitted) (emphasis added); *see also Carr*, 337 S.W.3d at 495.

### ii.    Interpreting the contract

The agreement is not ambiguous, and thus the court interprets the contract as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Of note, Berryman does not argue that the contract is ambiguous. *See* Doc. No. 46 at 7.

Although the court disagrees with his interpretation of the contract, that alone does not establish ambiguity. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) ("An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract.").

The court also finds that Newalta is a proper third-party beneficiary. A third-party beneficiary need not be expressly named in the contract. *See, e.g., Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App. 2012) ("The third-party beneficiary need not be specifically named in the contract but must be otherwise sufficiently described or designated."). The focus, instead, is on the contracting parties' **intent**. *See S. Texas Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). That is, the contract must include language that clearly expresses the parties' intent to confer a direct benefit upon the third-party. *Id.*

Here, the contract states that the benefit of arbitration is to resolve disputes in a "fair, private, expeditious, economical, final and less burdensome" manner, as compared to the more adversarial process of litigation. Doc. No. 28-2 at 1. The contract further provides:

> [W]hile it is agreed that Contractor is not an employee of the Company or any Company Client, it is acknowledged that disputes arising between contractors and companies can be similar to those that arise between employees and employers… **Contractor and the Company agree to resolve any and all Covered Claims through final and binding arbitration.**

Id. at 2–3, ¶ 5 (emphasis added). Covered Claims include all disputes arising under state and federal law, "including any claim under any laws governing compensation and overtime," such as the PMWA or FLSA. *Id.* at 1–2, ¶¶ 2–3. Covered Claims expressly include those

> arising out of or relating in any way to the services or work Contractor . . .performs **for or on behalf of any client of the Company** . . .

Id. at 1, ¶ 2 (emphasis added). The contract further states:

Arbitration shall apply to any and all Covered Claims, whether asserted by Contractor **against the Company and/or** . . . **against any Company Client**."

*Id*. (emphasis added). Based on this language, the parties clearly intended a direct benefit for Smith Management's company clients—i.e., resolving disputes through arbitration. It is also clear that the parties intended for Berryman to arbitrate "Covered Claims" against Smith Management's company clients, such as Newalta.

In finding that Newalta is a third-party beneficiary, the court is mindful of the presumption *against* conferring this status on noncontracting parties. The court nevertheless views the entire agreement "as a whole" to harmonize and give effect to all its provisions. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). Here, the agreement repeatedly references Smith Management's company clients. The contract explicitly states that arbitration shall apply "to any and all Covered Claims, whether asserted by Contractor against the Company… **or against any Company Client**." Doc. No. 28-2 at 1 (emphasis added). There is no way to give meaningful effect to this language other than to find that Berryman agreed to arbitrate his claims against Newalta.

In making its decision, the court finds instructive *In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008), wherein the Texas Supreme Court held that a third-party beneficiary could compel arbitration even though it was not a signatory to the agreement. *Id.* at 267. The *NEXT* court relied almost exclusively on Third Circuit precedent in making its holding: *In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F.3d 225 (3d Cir. 1998).

In *Prudential*, plaintiff sales agent signed a "U-4 Form," thereby agreeing to arbitrate any dispute "that may arise between me and my firm" and all disputes that may arise "between or among members of the [National Association of Securities Dealers] NASD." *Id.* at 228. The court

reasoned that, because the nonsignatory company was a member of the NASD, there was a clear intent that the sales agent would arbitrate his claims against that company. *Id*. at 229. The court further reasoned that the parties intended to benefit "certain classes of individuals," who were not signatories to the contract — that is, members of the NASD. *Id*.

In this case, the parties are not members of the securities industry, and this contract is not part of broader efforts aimed at regulating an entire industry. *See In re Prudential*, 133 F.3d at 229. Nevertheless, the case is persuasive because it is clear from the arbitration agreement that Berryman and Smith Management intended to benefit **a certain class**. That is, the contract makes clear that the parties intended to directly benefit Smith Management's company clients, and that any disputes involving those clients would be resolved at binding arbitration.

As a final matter, the court briefly addresses Berryman's argument that the language in the agreement does not demonstrate the requisite intent to make Newalta a third-party beneficiary. To that end, Berryman cites to Paragraph 5 of the agreement, where it states that "**Contractor** and the **Company** agree to resolve any and all covered claims through final and binding arbitration." Doc. No. 28-2 at 2, ¶ 5 (emphasis added). He also cites to Paragraph 12: "**The Parties** [defined as the Company and the Contractor] understand that if either the Company or Contractor files a lawsuit regarding a covered claim, **the other party** may use this Agreement in support of its request to the court to dismiss the lawsuit and require instead the use of arbitration." Doc. No. 28-2 at 4, ¶ 12 (emphasis added). Because there is no mention of third parties in this cited language, Berryman claims that there is no intent to make Newalta a third-party beneficiary. Doc. No. 46 at 7.

Berryman's argument is unpersuasive. If the court agreed with Berryman's interpretation that only Smith Management, and not Newalta, could compel arbitration, the result would be illogical. Berryman could frustrate the parties' clear intent by litigating Covered Claims in court,

provided that he sued the company client instead of Smith Management. Although that is precisely what Berryman is attempting to do,[5] the agreement plainly states that Berryman agreed to arbitrate "all Covered Claims," including those brought against a company client. Doc. No. 28-2 at 1, ¶ 3.

Berryman's argument is also unpersuasive because no single provision in the agreement, taken alone, should be given controlling affect. Rather, all the provisions must be considered with reference to the whole instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The agreement, when viewed as a whole, clearly and unequivocally expresses the parties' intent that all covered claims would be subject to arbitration, including those against a company client. Berryman's piecemeal approach would not only frustrate the clear intent of the parties, it would render meaningless essentially every reference in the agreement to Smith Management's company clients.

Because Newalta is a third-party beneficiary, the court finds that Newalta has standing to compel arbitration. There is thus a binding agreement to arbitrate between the parties, and the only remaining issue is whether this dispute falls within the scope of that agreement.

### 2. Scope of the agreement

In determining whether Berryman's claims fall within the scope of the arbitration agreement, the "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d

---

[5] Oddly, while Berryman only sues Newalta, he attached to his complaint a consent form to participate in a class-action suit against Newalta *and* Smith Management. Doc. No. 1-1 at 2. Berryman's actions are, once again, inconsistent with the terms of the arbitration agreement. Berryman agreed to waive his right to "prosecute, participate in, or pursue a class or collective action against the Company or with respect to any Covered Claim." Doc. No. 28-2 at 4, ¶ 9.

44, 55 (3d Cir. 2001) (internal quotation and citations omitted). The court again applies federal law. *Santana v. A.L. Recovery, LLC*, No. CV 18-16, 2018 WL 3912830, at *8 (W.D. Pa. Aug. 16, 2018); *see also supra* note 2.

Given the federal policy under the FAA favoring arbitration, there is a "presumption of arbitrability," and all doubts regarding the scope of an arbitration agreement should weigh in favor of arbitration. *Id.*; *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.").

Here, the parties do not dispute that Berryman's claims fall within the scope of the arbitration agreement. Indeed, Berryman admits that the "subject matter" of his claims are "envisioned in the contract he executed with Smith Management." Doc. No. 46 at 8. "Covered Claims" include those arising under federal or state law, and "any claim under any other laws governing compensation and overtime, such as the Fair Labor Standards Act." Doc. No. 28-2 at 2, ¶ 3. Based on this language, Berryman's claims unquestionably fit within the scope of the agreement.

Although the issue was not raised by the parties, the court further finds that arbitration agreements are lawful in the context of both FLSA and PMWA claims. *See, e.g.*, *Giordano v. Pep Boys--Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *4 (E.D. Pa. Mar. 29, 2001) ("[A]greements to arbitrate FLSA claims are enforceable pursuant to the FAA."); *Williams v. Nabors Drilling USA, LP*, No. CIV.A. 13-1013, 2014 WL 710078, at *6–7 (W.D. Pa. Feb. 25, 2014). Similarly, class-action waivers found in such agreements are lawful. *See Williams*, 2014

WL 710078, at *6–7 (upholding arbitration agreement despite plaintiffs arguing that class-action waiver of FLSA and PMWA claims was substantively unconscionable).

## C.     Waiver of arbitrability

The final issue before the court is whether Newalta waived its right under the FAA to compel arbitration by filing a third-party complaint against Smith Management. "[C]ourts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–18 (3d Cir. 2007). The court again applies federal law.[6] *See id.*; *Khan v. Parsons Glob. Servs., Ltd.*, 480 F. Supp. 2d 327, 332 (D.D.C. 2007), rev'd on other grounds, 521 F.3d 421 (D.C. Cir. 2008) ("Because this type of determination [i.e., waiver] is one concerning the arbitrability of a claim, the issue of waiver of right to arbitrate should be decided by the Court, not an arbitrator, according to federal law"); *see also supra* note 2.

"Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and will normally be found only where the demand for arbitration came long after

---

[6] Although the parties do not raise this issue, to the extent one could argue that Texas law should apply to the issue of waiver of arbitrability, the court finds that the legal analysis is virtually identical. *See, e.g.*, *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) ("Waiver in cases where litigation has begun will be found only when the party seeking to enforce the agreement substantially invokes the judicial process to the other party's detriment."); *Citizens Nat. Bank v. Bryce*, 271 S.W.3d 347, 354–55 (Tex. App. 2008) ("Although the presumption against waiver is not irrebuttable . . . . a party asserting waiver bears a heavy burden of proof. Any doubts regarding waiver are resolved in favor of arbitration.") (internal quotations and citations omitted). As discussed in footnote 2, supra, the court applies federal law to the issues of arbitrability, aside from matters of contract interpretation.

the suit commenced and when both parties had engaged in extensive discovery." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (internal quotations and citations omitted). In determining a waiver of arbitrability, the court's primary concern is prejudice. *Id.* Along these lines, courts are guided by the "*Hoxworth*" factors:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Id.* (quoting *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926–27 (3d Cir. 1992)). The analysis goes beyond "merely counting the factors for or against finding a waiver" and ultimately depends on the circumstances of each case. *See Gray*, 654 F.3d at 451; *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 209 (3d Cir. 2010).

In applying the *Hoxworth* factors, the court finds that none of them support waiver of Newalta's right to compel arbitration, nor do any other circumstances.

With respect to the first factor, the timeliness of the motion to arbitrate, Newalta moved to compel arbitration during the initial pleading stages and before the parties have even participated in an initial Rule 16 conference. There has not been lengthy or protracted litigation, which other courts have used to justify waiver. *See, e.g.*, *Nino*, 609 F.3d at 210–14 (exhaustively applying the *Hoxworth* factors and comparing cases).

As to the second factor, the court finds that Newalta has minimally contested the merits of Berryman's claims. Put simply, Newalta has not engaged in significant motions practice on the

merits prior to moving to compel arbitration. Although Newalta filed a third-party complaint, this filing hardly suggests that Newalta is substantially invoking the judicial process.

The third factor is whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to filing the motion to compel. The court has no evidence regarding this factor.

The extent to which the party seeking arbitration engaged in non-merits motion practice encompasses the fourth factor. Newalta's non-merits motions practice has been minimal. Newalta has only sought a stay of proceedings pending the outcome the arbitration issue. Doc. No. 32. Along these lines, the court cannot say that Newalta has engaged in motions practice of any kind such that it has demonstrated the intent to litigate in court as opposed to arbitrate.

As to the fifth factor — a party's acquiescence in a court's pretrial orders — this factor does not support waiver. The court has not issued substantive pretrial orders, and Newalta has not attended even a single status conference.

As to the sixth and final factor, the parties have not engaged in substantial discovery practice. This factor is perhaps most significant in terms of finding that waiver is not appropriate. *See In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 120 (3d Cir. 2012) ("Our cases finding waiver have uniformly featured significant discovery activity in the district court.").

Overall, there are no circumstances that justify waiver. To the extent that Berryman has incurred prejudice, it resulted from his decision to litigate this case as opposed to arbitrate his claims according to the agreement he signed.

## IV.    CONCLUSION

There is no dispute that Newalta is a company client of Smith Management.  Similarly, there is no dispute that Berryman's claims fit within the scope of the arbitration agreement.  Rather, the primary dispute concerns whether Newalta is a third-party beneficiary of the arbitration agreement.  In reviewing the plain language of the contract, and in considering the entire agreement to give meaningful effect to all its provisions, the court has found that the parties intended to confer a direct benefit on Newalta as one of Smith Management's company clients.  Newalta, therefore, is a third-party beneficiary with standing to compel arbitration.

Newalta has asked this court to compel arbitration and to dismiss this case.  The court will grant the motion to the extent it will compel arbitration.  Rather than dismiss the case, the court will stay the action pending arbitration.  This approach promotes greater judicial efficiency and effectuates the FAA's intent by requiring timely arbitration without allowing a lengthy appeal process at the outset.  *See* Fed. R. Civ. P. 1; 9 U.S.C. § 3; *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 270 (3d Cir. 2004) ("The legislative scheme of the FAA thus reflects a policy decision that, if a district court determines that arbitration of a claim is called for, the judicial system's interference with the arbitral process should end unless and until there is a final award.").

Finally, given that all of Berryman's claims are subject to final and binding arbitration, the only remaining claims in this case are found in Newalta's third-party complaint against Smith Management.  *See* Doc. No. 18.  The court will now decline to exercise supplemental jurisdiction over these state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction.").  Accordingly, Newalta's third-party complaint, in its entirety, will be dismissed without prejudice.

An appropriate order follows.

<u>*s/Nora Barry Fischer*</u>
Nora Barry Fischer
U.S. District Judge

Dated: November 1, 2018

cc/ecf: All counsel of record.